## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Steven J. Roy, Michael Cheney,
Kevin Laurent, Matthew L. Tsopas,
Daniel T. Rainville, and Jason R. Nolan

    v.                                    Civil No. 18-cv-817-JL

New Hampshire Department of Corrections
Commissioner Helen Hanks; Director of
Forensic Services Paula Mattis; Bernadette
Campbell; Centurion of New Hampshire LLC;
MHM Solutions, Inc.; Jose Aviles; Edward
Dransite; FNU Anzel; Keith Batchelder;
Raj Pande; and Kathy Belisle

### REPORT AND RECOMMENDATION

Before the court is the complaint (Doc. No. 1), filed by
plaintiffs, Steven J. Roy, Michael Cheney, Kevin Laurent,
Matthew L. Tsopas, Daniel T. Rainville, and Jason R. Nolan,
inmates at the Northern New Hampshire Correctional Facility
("NCF"). Plaintiffs assert violations of their Eighth and
Fourteenth Amendment rights relating to their unmet oral health
needs, and NCF dental care practices that they allege amount to
dental malpractice under state law. Plaintiffs, who have
appeared in this case without counsel to represent them, also
seek to have their case certified as a class action, brought on
behalf of all NCF inmates who may have dental health needs.
Defendants named in their individual and official capacities are
New Hampshire Department of Corrections ("DOC") Commissioner

Helen Hanks; DOC Director of Medical and Forensic Services Paula
Mattis; DOC Deputy Director of Medical Services Bernadette
Campbell; (former) NCF Dental Administrator Kathy Belisle;
supervising dentists Dr. Jose Aviles, Dr. FNU Anzel, and Dr.
Edward Dransite; dental care providers Dr. Keith Batchelder and
Dr. Raj Pande; Centurion of New Hampshire LLC ("Centurion"); and
MHM Solutions, Inc. ("MHM").[1]

This matter has been referred to the magistrate judge to
conduct preliminary review, pursuant to 28 U.S.C. § 1915A; LR
4.3(d)(1).  That review is pending.  As this case involves
multiple pro se plaintiffs requesting class certification, the
court subjects the instant complaint to a pre-screening to
determine whether class certification might be appropriate in
this case, whether the case should be maintained as a joint
action, or whether the matter should be severed into multiple
suits.  See generally Fed. R. Civ. P. 21 ("On motion or on its
own, the court may at any time, on just terms, add or drop a
party.  The court may also sever any claim against a party.");
see also Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680,
683 (7th Cir. 2012) (district judges "should be able to spot a
complaint" with misjoined claims or defendants "within days of

---

[1]Plaintiffs assert that MHM contracted with DOC to provide
dental health care to NCF inmates until April 2018, and that
Centurion contracted to do so after the MHM contract ended.

its filing," and then "solve the problem by severance (creating multiple suits that can be separately screened)" or by "dismissing the excess defendants").

## Background

### I.  Overview

The six named plaintiffs have appeared together in a single case, for which they paid a single filing fee.  They each signed the complaint (Doc. No. 1) individually, initiating this action without counsel.  These pro se plaintiffs assert claims arising under state tort law and 42 U.S.C. § 1983 against the defendant dental care providers and prison administrators, based on the matters asserted in the complaint and summarized below.

Plaintiffs specifically assert that they have received inadequate treatment for dental, endodontal, and periodontal issues while at NCF, under the care of defendant dentists, dental care providers, and (former) NCF dental administrator Kathy Belisle, subject to the supervision of the defendant prison administrators.  Plaintiffs allege generally that the dental department at NCF is understaffed and underfunded, and that the dental care plaintiffs received has been inadequately reactive, not appropriately preventive or proactive, and manifests malpractice and deliberate indifference to their dental health needs.  In the prayer for relief in the complaint

(Doc. No. 1), plaintiffs ask for damages, declaratory relief, and injunctive relief,[2] and seek to have their case certified as a class action under Federal Rule of Civil Procedure 23.

II.  Steven Roy

    A.  2007 and 2009 Lawsuits

In 2007, plaintiff Steven Roy filed a lawsuit against a number of prison officials, corrections officers, and dental care providers, claiming, among other things, that defendants had failed to provide him with adequate or appropriate dental care, in violation of his Eighth Amendment rights.  See Roy v. N.H. Dep't of Corr. Comm'r, No. 1:07-cv-353-PB (D.N.H.) ("Roy I").  Roy, who filed that case pro se, moved for an appointment of counsel to represent him, and the court granted that motion. See Aug. 18, 2008 Order, Roy I (ECF No. 64).  That case settled. See Dec. 24, 2009 Stip. of Dismissal, Roy I (ECF No. 70).

In 2009, plaintiff Roy was the lead plaintiff in a group of eight prisoner plaintiffs who, through counsel, jointly filed a case challenging the adequacy of the dental care each of those plaintiffs received while in DOC custody.  See Roy v. N.H. Dep't

_____

[2]Although plaintiffs have requested "preliminary" injunctive relief in their prayer for relief, they have not filed a motion asking the court to order such relief.  See Fed. R. Civ. P. 7(b); LR 7.1.

of Corr. Comm'r, No. 1:09-cv-00075-SM (D.N.H.) ("Roy II").[3]  That case also settled.  See Jan. 20, 2011 Stip. of Dismissal, Roy II (ECF No. 47).  Roy asserts that, pursuant to the settlement agreement in the 2009 case, the defendants agreed to provide him with semi-annual teeth cleanings, and to "fast-track" the provision of upper and lower partial dentures to Roy.

Roy asserts here that the DOC has failed to uphold those commitments.  Roy alleges that his teeth cleanings have not occurred regularly each year.  He further asserts he received an upper partial in 2014, and a lower partial in December 2016, four to six years after the 2009 case settled.  He contends that delays in his receipt of the lower partial caused him to lose a number of his bottom teeth.

B.  Recent Dental Care Issues

Roy asserts that the lower partial Dr. Anzel provided to him in 2016 was anchored to a tooth (#28) that "disintegrated" a week later, and that neither Dr. Anzel, nor any other provider in the NCF dental department, responded to Roy's requests relating to the loss of that tooth.  Roy further alleges that although Dr. Anzel diagnosed abscesses in his teeth (#2, #3,

---

[3]Plaintiffs in the 2009 case initially styled their complaint as a class action, but later withdrew their request for class certification.  See Feb. 4, 2010 Stip. Withdrawing Req. for Class Action Relief, Roy II (ECF No. 38).

#23, #24, and #25) in October 2016, none of those abscesses were promptly treated.  In July 2017, Roy went to dental sick call for missing fillings in teeth #11 and #20, the disintegration of tooth #28, the "break up" of tooth #23, and the loss of tooth #27 from his lower partial.  Dr. Anzel prescribed antibiotics for abscesses in his teeth and recommended that tooth #24 and tooth #25 be extracted.  Dr. Batchelder subsequently extracted teeth #23, #24, and #25.  Roy Aff. (Nov. 15, 2017), Doc. No. 1, at 47.  Roy asserts that the NCF dental department delayed or cancelled his semi-annual cleanings on a number of occasions, and that in 2018 he did not receive appointments for procedures that dentists had recommended multiple times between December 2016 and July 2017, to fill, repair, or remove damaged or abscessed teeth.  See, e.g., Roy Aff. (Nov. 15, 2017), Doc. No. 1, at 47.

III. Michael Cheney

Michael Cheney arrived at NCF with a diagnosis of gingivitis, for which he asserts he has received no treatment. He alleges he has received only one cleaning at NCF, in 2014, despite multiple requests.  Dr. Aviles promised Cheney an upper partial that Cheney never received.

IV.   Kevin Laurent

Kevin Laurent alleges that while trying to fit an upper partial in Laurent's mouth, Dr. Aviles broke it.  Dr. Aviles later extracted Laurent's remaining upper teeth, upon concluding that the broken partial was damaging them.  Dr. Aviles then provided Laurent with a poorly fitting upper full denture, which he refused to adjust.  Dr. Batchelder then replaced that upper denture with another ill-fitting full denture.

Dr. Aviles also provided Laurent with an ill-fitting bottom partial.  Dr. Batchelder then provided Laurent with a new, but defective, bottom partial that snapped.  Dr. Batchelder then removed all but four of Laurent's bottom teeth.  Laurent is still lacking a functioning lower partial.

V.   Matthew Tsopas

Tsopas alleges that he has not had his teeth cleaned during his five years of his incarceration, despite requests.  Tsopas asserts that Dr. Batchelder extracted a chipped tooth from his mouth in December 2017/January 2018, and that after that procedure, broken tooth pieces came out of his gums for four weeks.  He was unable to get an appointment to fix that problem until weeks later, in late February.  He further alleges that dental administrator Kathy Belisle refused to schedule a cleaning for Tsopas despite Dr. Batchelder's directive that she

do so.

When Tsopas had pain in a right lower tooth in June 2018, Dr. Batchelder diagnosed an abscess and recommended that two adjacent teeth be extracted immediately.  Tsopas asserts that he underwent that procedure, which was "excruciating."  Dr. Batchelder failed to stitch and pack the extraction site, or prescribe antibiotics for Tsopas.  Tsopas asserts that he suffered post-surgical complications including pain, swelling, and a painful dry socket that lasted for over a week.

In July/August 2018, Dr. Batchelder diagnosed Tsopas as having a painful, impacted wisdom tooth.  Tsopas disagrees with that diagnosis and believes there is an undiagnosed "dark spot" visible on his x-ray in the area where he felt pain.

VI.  Daniel Rainville

Rainville alleges that he has not had any teeth cleanings while incarcerated at NCF.  In spring 2017, Rainville received a diagnosis that five of his teeth needed fillings.  One of those cavities was filled in January 2018, but the filling fell out a week later.  He asserts that understaffing and the implementation of a "one tooth policy," allowing only one tooth to be fixed at a time even if multiple teeth need work, has delayed the treatment of his decayed teeth and led to their continued deterioration.

8

VII. <u>Jason Nolan</u>

In 2015 Dr. Aviles examined Jason Nolan's teeth and identified decay in one front tooth and an incomplete root canal in another tooth. Dr. Aviles told Nolan that if his two front teeth were extracted in lieu of repairs, Nolan would receive partial dentures. Nolan agreed, and those teeth were extracted. Nolan has not received the promised upper partial, and the loss of those teeth has caused Nolan to lisp and has harmed his self-esteem. He asserts that he cannot bite properly or eat certain foods, and that his gums are now receding.

After Dr. Aviles retired in 2016, Nolan saw Dr. Batchelder for two painful upper molars. Dr. Batchelder extracted those molars, and then told Nolan that he needed to receive an upper partial. Defendant Kathy Belisle told the dentist that Nolan was already "on the list" to receive a partial.

In May 2018, Nolan received a teeth cleaning, his first since being incarcerated, and at that time the dentist diagnosed some teeth with decay. Nolan has not received appointments to have those teeth repaired.

In June 2018, Nolan saw Dr. Batchelder for a gum sore. Dr. Batchelder instructed Kathy Belisle to make an impression to fit Nolan for an upper partial, which she refused to do, saying that Nolan was already on the list. Nolan grieved the lack of an upper partial at that time and was told that he cannot get a

partial because he needs fillings.  He asserts that he has been
unable to secure any dental appointments for fillings.

## Discussion

I.    Request for Class Certification

The six named plaintiffs assert that hundreds of prisoners
at NCF suffer from serious dental conditions and are entirely
dependent on DOC for their dental care, and that over six
hundred NCF prisoners are at risk of developing serious, painful
dental conditions while in prison.[4]  Plaintiffs seek to bring
this action on behalf of "all prisoners who are now, or will in
the future be, housed" at NCF, who may have dental needs.
Compl. (Doc. No. 1), at 9.  Plaintiffs assert that defendants
have acted or have refused to act on grounds generally
applicable to that class, and that the six plaintiffs are
capable of fairly and adequately representing the class and
protecting its interests.  Doc. No. 1, at 10.

A Rule 23 class action is an action in which "[o]ne or more
members of a class" are authorized to sue "as representative
parties on behalf of all [class] members."  Fed. R. Civ. P. 23.
To qualify as a class action under Rule 23, a case must have the

---

[4]NCF's population on July 1, 2018 was reported to be 645
inmates.  See N.H. Dep't of Corr., NCF Facility Details,
https://www.nh.gov/nhdoc/facilities/berlin.html (last accessed
Oct. 24, 2018).

following characteristics:  (1) too many plaintiffs to join
through a typical joinder motion ("numerosity"), (2) certain
common factual or legal issues shared by each member of the
class ("commonality"), (3) a named plaintiff whose claim is
typical of the claims of the unnamed plaintiffs ("typicality"),
and (4) a named plaintiff who is an adequate representative of
the unnamed plaintiffs' interests ("adequacy").  Fed. R. Civ. P.
23(a); Amchem Prods ., Inc. v. Windsor, 521 U.S. 591, 613
(1997).  A case cannot proceed as a class action under Rule 23
unless it is certified as such by the court.  Fed. R. Civ. P.
23(c)(1).

       "As a general rule . . . an individual appearing pro se may
not represent other individuals in federal court, see 28 U.S.C.
§ 1654, and courts have routinely denied a prisoner's request to
represent a class of prisoners without the assistance of
counsel."  Vazquez v. Fed. Bureau of Prisons, 999 F. Supp. 2d
174, 177 (D.D.C. 2013) (citing cases).  "[I]t is generally not
an abuse of discretion for a district court to deny a motion for
class certification on the ground that a pro se litigant is not
an adequate class representative."  Howard v. Pollard, 814 F.3d
476, 478 (7th Cir. 2015)  (emphasis in original).

       Each plaintiff who signed the complaint (Doc. No. 1) is
appearing pro se in this action, and none of them is an attorney
admitted to the Bar of this court.  Those pro se plaintiffs

cannot adequately represent the interests of the class they have identified. Accordingly, the district judge should deny the request for class certification set forth in the complaint, without prejudice to plaintiffs' ability to refile a similar request through any counsel who may appear on their behalf.

II.   Standard for Permissive Joinder of Plaintiffs

As this is a multi-plaintiff prisoner complaint, the court next turns to whether the pro se plaintiffs may proceed jointly in this single case, outside of the context of a class action. Federal Rule of Civil Procedure 20(a)(1) allows for multiple plaintiffs to file a joint complaint, if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A), (B).

> The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. This does not mean, however, that parties should be given free [rein] to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated.

Gresham v. Smith, No. 1:16-CV-1402, 2017 WL 33567, at *3, 2017 U.S. Dist. LEXIS 681, at *10 (W.D. Mich. Jan. 4, 2017) (citations omitted).

While plaintiffs' claims clearly implicate common questions of law and fact, they do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Each plaintiff's claim of malpractice or deliberate indifference to serious dental health needs is personal to each of them and involves distinct sets of facts. Each plaintiff has his own oral health issues. Each plaintiff interacted at different times with some of the various dental providers and administrators named as defendants, with respect to his own particular dental problems. Not every plaintiff had contact with every defendant. Moreover, should the defendants assert defenses in this case based on the statute of limitations or the failure exhaust administrative remedies, see 42 U.S.C. § 1997e(a), plaintiffs' response to those defenses would likely require different proof for each plaintiff.

The similarities in facts and legal issues that plaintiffs allege, including that many have had extractions and are awaiting dentures or have not had their teeth properly cleaned, filled, or repaired, do not convert their individual claims based on their own needs into claims arising from the same transaction or series of transactions or occurrences.

> If Rule 20(a)'s requirement were satisfied by the allegation of a similar policy or procedure, every inmate in a particular prison facility claiming deliberate indifference to his or her medical needs could join in a

single action against the prison's corrections staff and/or
medical providers.

Stojcevski v. Cty. of Macomb, 143 F. Supp. 3d 675, 683 (E.D.
Mich. 2015); see also Harris v. Spellman, 150 F.R.D. 130, 131-32
(N.D. Ill. 1993) (allegedly similar procedural errors do not
convert independent prison disciplinary hearings into same
"series" of transactions or occurrences for purposes of
permissive joinder of claims of two prisoner plaintiffs).
Because plaintiffs fail to allege facts showing that their
claims arise out of the same transaction or series of
transactions or occurrences, joinder of their claims in a single
civil rights action is not appropriate under Rule 20(a)(1).

III. Severance and Filing Fee

Federal Rule of Civil Procedure 21 governs the remedies for
misjoinder of parties. Alvarado v. City of L.A., 720 F. App'x
889, 903 (9th Cir. 2018). There are two remedial options
available under Rule 21: (1) misjoined parties may be dropped on
just terms; or (2) the claims against misjoined parties may be
severed and allowed to proceed separately. See Fed. R. Civ. P.
21; Visendi v. Bank of Am., N.A., 733 F.3d 863, 871 (9th Cir.
2013); DirecTV, Inc. v. Leto, 467 F.3d 842, 846-47 & n.4 (3d
Cir. 2006). Rule 21 permits dismissals of parties if the
dismissals "do not cause 'gratuitous harm to the parties.'"

Strandlund v. Hawley, 532 F.3d 741, 745 (8th Cir. 2008)
(citations omitted).

To avoid creating statutes of limitations problems for any
of the plaintiffs who might not have such problems in this suit,
the appropriate remedial option here is to sever each
plaintiff's claims, drop all of the plaintiffs from this case
other than Steven J. Roy, and to allow new cases to be opened,
one for each other plaintiff, naming the same defendants in each
new case, and using the complaint filed here (Doc. No. 1) and
its filing date to initiate each of those cases.  As the filing
fee must be paid in each of those cases, either up front or over
time pursuant to 28 U.S.C. § 1915(b)(1), the district judge
should further direct the clerk's office to re-allocate the
single $400.00 filing fee paid in this case equally among all
six cases, at an amount of $66.67 per case.

### Conclusion

For the foregoing reasons, the district judge should accept
this Report and Recommendation and issue the following Order
denying class certification and severing plaintiffs' claims:

> 1.   The request for class certification in the
> complaint (Doc. No. 1) is denied without prejudice to
> refiling if counsel appears for plaintiffs.

> 2.   Joinder of the individual plaintiffs' claims in a
> single case is inappropriate.  The clerk's office is
> directed to drop all plaintiffs from this case except for

Steven J. Roy and to open five new prisoner civil rights cases, one for each of the dropped plaintiffs. Defendants named in each new case shall be the same defendants named here, and the initial pleading in each case shall be the complaint (Doc. No. 1) here, using the complaint's filing date here as its filing date in those cases.

3.    An Order shall issue from the clerk's office in each of those new cases, requiring each plaintiff to pay the filing fee or file a complete application to proceed in forma pauperis within sixty days of the date of that Order. The single filing fee paid in this case shall be credited to each plaintiff's case equally, at an amount of $66.67 per case.

4.    The court will complete its preliminary review of the claims in a particular case after the entire filing fee for that case is paid, or the plaintiff in that case files a complete application to proceed in forma pauperis, and it is granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

October 24, 2018

cc:  Steven J. Roy, pro se
     Michael Cheney, pro se
     Kevin Laurent, pro se
     Matthew L. Tsopas, pro se
     Daniel T. Rainville, pro se
     Jason R. Nolan, pro se

16