UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Steven J. Roy[1]


            v.                         Civil No. 18-cv-817-JL

New Hampshire Department of Corrections
Commissioner Helen Hanks; Director of Medical
and Forensic Services Paula Mattis; Bernadette
Campbell, Administrator, Medical and Forensic
Services; Centurion of New Hampshire LLC;
MHM Solutions, Inc.; Dr. Jose Aviles; Dr. Edward
Dransite; Dr. FNU Anzel; Dr. Keith Batchelder;
Dr. Raj Pande; and Kathy Belisle


## REPORT AND RECOMMENDATION

Before the court is plaintiff Steven J. Roy's complaint
(Doc. No. 1) and motion for a preliminary injunction (Doc. No.
18).  Roy, an inmate at the Northern New Hampshire Correctional
Facility ("NCF"), asserts claims relating to the dental care he
has received at NCF.  Defendants, named in their individual and
official capacities, are New Hampshire Department of Corrections
("DOC") officials, employees, and dentists Dr. Jose Aviles, Dr.
FNU Anzel, Dr. Edward Dransite, Dr. Keith Batchelder, and Dr.
Raj Pande; Centurion of New Hampshire LLC ("Centurion"); and MHM

---

[1]All of the other plaintiffs have been dropped as parties,
and the request for class certification has been denied, leaving
Roy the sole plaintiff in this case.  See Nov. 16, 2018 Order
(Doc. No. 5) (approving Oct. 24, 2018 R&R (Doc. No. 3)).

Solutions, Inc. ("MHM").[2]

The complaint (Doc. No. 1), as supplemented by the factual allegations in the motion for a preliminary injunction (Doc. No. 18), is before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).  The motion for a preliminary injunction has been referred to the undersigned magistrate judge for a report and recommendation, see April 10, 2019 Order.

## Background

Roy asserts that he has received inadequate dental care while at NCF.  Roy alleges generally that the NCF Dental Department is understaffed and underfunded, and that NCF dental care is inadequately reactive and not appropriately preventive and proactive.

### I.   Settlement Agreement

Roy was the lead plaintiff in a group of eight plaintiffs in 2009 who, through counsel, jointly filed a case against a set of DOC officials, challenging the adequacy of the dental care those plaintiffs received in DOC custody.  See Roy v. N.H. Dep't

---

[2]Roy identified MHM as "MHM Solutions, Inc."  The New Hampshire Department of State's online list of registered businesses indicates that the business formerly named "MHM Solutions, Inc.," is now called, "MHM Solutions, LLC."

of Corr. Comm'r, No. 1:09-cv-00075-SM (D.N.H.) ("Roy I").[3]  That
case settled.  See Jan. 20, 2011 Stip., Roy I, ECF No. 47.  Roy
asserts here that the settlement agreement required DOC dentists
to provide him with semi-annual teeth cleanings and to "fast-
track" his receipt of upper and lower partial dentures.  See
Aff. of Steven Roy, Aug. 7, 2017 ("August 2017 Affidavit") (Doc.
No. 1, at 19).  Roy asserts that the DOC breached that agreement
by failing to schedule teeth cleanings every six months and by
delaying the delivery of his partial dentures.

## II.  Teeth Cleanings and Partial Dentures

Roy reports he received no teeth cleanings in 2014, and
that the two cleanings he received in 2015 (January and August),
2016 (April and October), 2017 (April and December), and 2018
(June and December), were scheduled on dates that diverged from
regular, six-month intervals.  See Aff. of Steven Roy, Aug. 22,
2018 (Doc. No. 1, at 24) ("August 2018 Affidavit"); Aff. of
Steven Roy, Jan. 21, 2019 ("January 2019 Affidavit") (Doc. No.
18, at 4).

---

[3]The Roy I defendants named in their individual and official
capacities were former DOC Commissioner William Wrenn, former
New Hampshire State Prison Warden Richard Gerry, former NCF
Warden Lawrence Blaisdell, former DOC Medical and Forensic
Department Director Dr. Robert MacLeod, and former DOC
Supervising Dentist Dr. Karen Anderson, none of whom are named
as defendants in their individual capacities in this case.

Roy alleges that both of his partial dentures (upper and lower) had been authorized since 2010.  He asserts that, on October 1, 2013, Dr. Aviles notified him that both sets had been approved.  See August 2018 Affidavit (Doc. No. 1, at 24).  Roy received an upper partial in 2014 and a lower partial on December 22, 2016.  August 2017 Affidavit (Doc. No. 1, at 20).

III. Delays Preceding Receipt of Lower Partial

Roy contends that delays in his receipt of the lower partial caused the deterioration of his remaining bottom teeth, including front teeth #20 through #29, see Aff. of Steven Roy, June 14, 2017 ("June 2017 Affidavit") (Doc. No. 1, at 15), and the "sequential failure of [his] bottom molars," August 2017 Affidavit (Doc. No. 1, at 19).  Roy asserts that in 2010 he needed a lower partial only for teeth #19 and #30, but, by late 2016, he needed replacements for lower teeth #18, #19, #29, #30, and #31.  See id.  Roy further asserts that in an appointment on April 25, 2017, dentist Dr. Shyne said that his bottom front teeth had suffered excessive wear due to the lack of bottom molars, and that Dr. Anzel had expressed a similar opinion in October or December 2016 as to bottom front teeth #20 and #22. See June 2017 Affidavit (Doc. No. 1, at 15, 16).

IV.  <u>Loss of Fillings on Tooth #28 and Consequences</u>

Roy asserts that the lower partial denture fitted by Dr. Anzel on December 22, 2016 was anchored to teeth #20 and #28, and that three of the four fillings on tooth #28 fell out on December 29, 2016, rendering the partial "useless."  June 2017 Affidavit (Doc. No. 1, at 15).  Roy's January 2, 2017 Inmate Request Slip ("IRS") addressed to dentist Dr. Batchelder and copied to Dr. Anzel describes the damage to tooth #28, and reports that Roy remained able to use the lower partial to eat.  <u>See</u> IRS to Dr. Batchelder, Jan. 2, 2017 (Doc. No. 1, at 33).  Roy has asserted that denture adhesive he purchased in July 2017 was marginally effective in holding his lower partial in place.  <u>See</u> August 2017 Affidavit (Doc. No. 1, at 20).

Roy alleges that he reported the loss of fillings on tooth #28 to Dr. Anzel and Dr. Batchelder in January 2017, and again to Dr. Anzel on July 20, 2017.  <u>See</u> Aff. of Steven Roy, Nov. 15, 2017 ("November 2017 Affidavit") (Doc. No. 1, at 47).  Dr. Anzel characterized tooth #28 as irreparable in July 2017.  <u>See</u> August 2017 Affidavit (Doc. No. 1, at 20).  A dentist applied a crown to tooth #28 on December 4, 2017, which lasted three months, until March 19, 2018.  <u>See</u> January 2019 Affidavit (Doc. No. 18, at 4).  Dr. Pande examined tooth #28 in April 2018, declared it to be free of decay, and refused to perform any repair to it.  <u>See</u> August 2018 Affidavit (Doc. No. 1, at 25).  In response to

Roy's complaints of pain in tooth #28, a dentist applied
composite, which Roy asserts alleviated his pain, on September
24, 2018.

Roy reported to the dental administrator in December 2018
that Dr. Anzel had previously told Roy to request a new lower
partial, as Roy was eligible to do so.  See January 2019
Affidavit (Doc. No. 18, at 4).  The dental administrator told
Roy, however, that although he was no longer eligible for a new
lower partial, he could receive a full bottom denture if his
remaining bottom teeth were extracted.  See id.


V.   Abscesses, Decay, and Extractions

Roy asserts that abscesses related to dental problems, if
untreated, can cause cardiovascular and immune system damage.
See June 2017 Affidavit (Doc. No. 1, at 16); August 2017
Affidavit (Doc. No. 1, at 19).  Roy alleges that before Dr.
Aviles retired in 2016, he diagnosed Roy as having persistent
abscesses in teeth including teeth #2, #3, and several bottom
teeth, which he determined needed no immediate treatment, as he
considered the abscesses to be draining well.  See June 2017
Affidavit (Doc. No. 1, at 15).  Roy further alleges that Dr.
Anzel, on October 27, 2016 and December 22, 2016, diagnosed
abscesses in Roy's teeth #2, #3, #23, #24, and #25.  Id. at 15-
16; August 2017 Affidavit (Doc. No. 1, at 20).  Dr. Shyne

diagnosed abscesses in the same teeth and noted that a filling on tooth #11 was loose, in an appointment on April 25, 2017. June 2017 Affidavit (Doc. No. 1, at 16); see also August 2017 Affidavit (Doc. No. 1, at 19).

Roy alleges that during a July 10, 2017 dental appointment, Roy reported to Dr. Anzel that a tooth on his lower partial had broken off, that fillings in teeth #11 and #20 had fallen out, and that teeth #23 and #28 had disintegrated or broken apart. See August 2017 Affidavit (Doc. No. 1, at 20); November 2017 Affidavit (Doc. No. 1, at 47). On July 10, 2017, Dr. Anzel: prescribed antibiotics for Roy's abscessed teeth, concluded that they needed to be extracted, expressed his opinion that teeth #11 and #20 involved only "simple repairs," and opined that tooth #28 was "not reparable." August 2017 Affidavit (Doc. No. 1, at 20). Dr. Batchelder extracted teeth #23, #24, and #25 in November 2017. See November 2017 Affidavit (Doc. No. 1, at 47). Roy received fillings for teeth #20 and #21 on February 13, 2018. See August 2018 Affidavit (Doc. No. 1, at 25). Dr. Pande repaired tooth #22 on April 9, 2018. See August 2018 Affidavit (Doc. No. 1, at 25).

Roy alleges that on December 1, 2017, an unnamed dentist, assisted by defendant Kathy Belisle, recorded decay and chips on many of Roy's teeth. Roy asserts that the decayed or chipped teeth have not been treated or repaired. See January 2019

Affidavit (Doc. No. 18, at 4).  In a dental appointment on
December 13, 2018, the dental administrator made it clear that
Roy would receive no more repairs to his bottom teeth.  See id.

VI.  Single Procedure Rule and Extraction Preference

Roy asserts that the NCF Dental Department limits each
inmate's dental care to a "single procedure" per visit.  Roy
asserts that inmates with multiple, concurrent dental problems
must submit separate requests for each problem, that
appointments are typically scheduled months apart, and that
separate appointments are scheduled for each reported dental
problem.  November 2017 Affidavit (Doc. No. 1, at 47).  Roy
further alleges that the defendants prefer to extract teeth
rather than repair them.  See id.  As evidence of the
defendants' extraction preference, Roy points to statements made
by a dental administrator at Roy's September 2018 appointment,
when Roy was told he could not have any further repairs made to
his lower teeth, other than extractions.  As to the single
procedure policy, Roy alleges that when he went to dental "sick
call" on July 10, 2017, seeking an appointment for missing
fillings in teeth #11 and #20, repairs to teeth #23 and #28, and
repairs to his lower partial, Roy received a follow-up
appointment slip only for an extraction scheduled for November
2, 2017 and did not receive an appointment for the other

8

procedures.  Roy attributes that response to the "single
procedure rule."  Roy has also alleged that the "single
procedure rule" resulted in his having to defer a semi-annual
cleaning on one occasion so he could get a cavity filled.  See
November 2017 Affidavit (Doc. No. 1, at 47).


## Claims

Roy asserts the following claims in this case:

1.   Defendants are liable under 42 U.S.C. § 1983 and state law,
in that delays in Roy's receipt of an upper partial denture in
2014 violated the Eighth Amendment, breached the 2010 settlement
agreement in Roy I, and manifested negligence or malpractice.

2.   Defendants are liable under 42 U.S.C. § 1983 and state law,
with respect to Roy's teeth cleanings, in that:

   a.   The failure to provide any teeth cleanings to Roy in
   2014 violated the Eighth Amendment and breached the 2010
   settlement agreement in Roy I;

   b.   The failure to provide any teeth cleanings to Roy in
   2014 was negligence and/or professional malpractice; and

   c.   The variations in the scheduling of Roy's twice-yearly
   teeth cleanings in 2015-2018:

      i.   Violated his Eighth Amendment rights;

      ii.  Breached the 2010 settlement agreement in Roy I;
      and

      iii. Constituted negligence and/or professional
      malpractice.

3.   In failing to expedite Roy's receipt of a lower partial
denture prior to December 2016, in light of the risk that Roy's
front teeth would become excessively worn and Roy's back molars
would fail:

a.    Defendants Dr. Aviles and Dr. Dransite, who knew of Roy's need for a lower partial before an impression was made of Roy's teeth in October 2016, were deliberately indifferent to a substantial risk of serious harm to Roy, in violation of the Eighth Amendment;

b.    Defendants Helen Hanks, Paula Mattis, and Bernadette Campbell were deliberately indifferent to a substantial risk of serious harm to Roy, in violation of the Eighth Amendment; and

c.    Defendants Dr. Aviles, Dr. Dransite, and MHM failed to act in accordance with the standard of reasonable professional practice applicable to their profession at that time, resulting in harm to Roy, rendering those defendants liable for malpractice under state law; and

d.    Defendants breached the 2010 settlement agreement in Roy I.

4.    With respect to the failure of defendants to repair tooth #28 after fillings in that tooth fell out in late December 2016, prior to Roy's receipt of a crown in December 2017, and after that crown failed in March 2018, before composite was applied to it in September 2018:

a.    Defendants Drs. Anzel, Batchelder, and Pande were deliberately indifferent to a substantial risk of serious harm, in violation of Roy's Eighth Amendment rights;

b.    Defendants Helen Hanks, Paula Mattis, and Bernadette Campbell were deliberately indifferent to a substantial risk of serious harm, in violation of Roy's Eighth Amendment rights.

c.    Defendants Drs. Anzel, Batchelder, Pande, MHM, and Centurion failed to act in accordance with the standard of reasonable professional practice applicable to their profession at that time, resulting in harm to Roy, rendering those defendants liable for malpractice under state law.

5.    With respect to the failure to treat Roy's abscessed teeth #2, #3, #23, #24, and #25, from the date when those abscesses were diagnosed until Roy received a course of antibiotics in July 2017:

a.    Defendants Dr. Anzel, Dr. Aviles, Dr. Dransite, and
Dr. Batchelder were deliberately indifferent to a
substantial risk of serious harm to Roy, in violation of
his Eighth Amendment rights;

b.    Defendants Helen Hanks, Paula Mattis, and Bernadette
Campbell were deliberately indifferent to a substantial
risk of serious harm to Roy, in violation of his Eighth
Amendment rights; and

c.    Defendants Dr. Anzel, Dr. Aviles, Dr. Dransite, Dr.
Batchelder, and MHM did not act in accordance with the
standard of reasonable professional practice applicable to
their profession at that time, resulting in harm to Roy,
rendering those defendants liable for malpractice under
state law.

6.   With respect to the failure to treat decay identified in
Roy's teeth in the December 1, 2017 dental examination:

a.    Defendant DOC dentists, including Dr. Anzel, Dr.
Batchelder, and Dr. Pande, were deliberately indifferent to
a substantial risk of serious harm to Roy, in violation of
the Eighth Amendment;

b.    Defendant prison officials, including DOC Commissioner
Helen Hanks and DOC Director of Medical and Forensic
Services Paula Mattis, were deliberately indifferent to a
substantial risk of serious harm to Roy, in violation of
the Eighth Amendment.

c.    Defendants Dr. Anzel, Dr. Batchelder, Dr. Pande, MHM,
and Centurion failed to act in accordance with the standard
of reasonable professional practice applicable to their
profession at that time, resulting in harm to Roy,
rendering those defendants liable for malpractice under
state law.

7.   In delaying the scheduling of appointments for Roy's dental
problems diagnosed by dentists, including Dr. Anzel in December
2016 (abscesses in teeth #2, #3, #23, #24, #25); Dr. Shyne in
April 2017 (abscesses in teeth #2, #3, #23, #24, #25); and decay
identified by an unnamed dentist in December 2017, defendant
dental administrator Kathy Belisle was deliberately indifferent
to a substantial risk of serious harm to Roy, in violation of
his Eighth Amendment rights.

**Discussion**

I.   Preliminary Review

A.   Standard

The court conducts a preliminary review of inmate

complaints.  See 28 U.S.C. § 1915A(a); LR 4.3(d)(1).  Claims may

be dismissed sua sponte if, among other things, the complaint

fails to state a claim upon which relief may be granted, the

court lacks jurisdiction, or a defendant is immune from the

relief sought.  See 28 U.S.C. § 1915A(b).  To determine whether

to dismiss a complaint for failure to state a claim upon which

relief can be granted, the court takes as true the factual

content in the complaint and inferences reasonably drawn from

those facts, strips away the legal conclusions, and considers

whether plaintiff has stated a claim to relief that is plausible

on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03

(1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009)).  Dismissing an action on the basis of an affirmative

defense is permissible if the facts alleged in the complaint, or

matters susceptible of judicial notice, conclusively establish

the elements of the affirmative defense.  See Gray v. Evercore

Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008).


B.   Statute of Limitations (Claims 1, 2(a))

Roy alleges in Claim 1 that defendants caused the delay

preceding his receipt of an upper partial denture in 2014, and
that the delay manifested deliberate indifference to a
substantial risk of serious harm, negligence and malpractice,
and a breach of the 2010 settlement agreement.  In addition, in
Claim 2(a), Roy asserts that defendants are liable for breach of
contract and Eighth Amendment violations by failing to provide
him with any teeth cleanings in 2014.

There is a three-year statute of limitations that applies
to all of the state and federal claims at issue here.  See
Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); see also
N.H. Rev. Stat. Ann. § 508:4.  The limitations period for the
§ 1983 claims alleging violations of Roy's Eighth Amendment
rights accrued when Roy knew, or had reason to know of the
injury.  See Gorelik, 605 F.3d at 122.  A plaintiff is deemed to
know or have reason to know "at the time of the act itself and
not at the point that the harmful consequences are felt."  Id.
(internal quotation marks omitted).  State law similarly sets
the accrual date for tort claims or contract claims arising from
a discrete act at the point when the plaintiff knew or
reasonably should have known that the tort claim was complete,
or a breach had occurred.  See, e.g., Sykes v. RBS Citizens,
N.A., 2 F. Supp. 3d 128, 140 (D.N.H. 2014) (contract); Singer
Asset Fin. Co., LLC v. Wyner, 156 N.H. 468, 478, 937 A.2d 303,
313 (2007) (tort).

Roy received the upper partial in 2014, more than three years before he filed this action. Also, by the end of 2014, Roy knew he did not receive two dental cleanings that year. Accordingly, no later than the end of 2014, Roy knew or should have known of the occurrence of all elements of his federal claims of deliberate indifference and state claims of breach of contract relating to those matters. Accordingly, Claims 1 and 2(a) are barred by the statute of limitations.

C.    Teeth Cleaning Torts (Claims 2(b), (2)(c)(iii))

Roy asserts that the lack of teeth cleanings in 2014 and variations in the scheduling of his routine cleanings in 2015 - 2018, constituted negligence or malpractice. To state such claims, a plaintiff must plead facts showing, among other things, that the defendant's breach of a duty of care proximately caused his injuries. Assuming, without deciding, that a tort claim arising from the lack of teeth cleanings in 2014 is not barred by the statute of limitations, the district judge should still dismiss that claim as well as the tort claims regarding the ensuing schedule of other teeth cleanings in 2015-2018, as Roy's complaint does not plead facts sufficient to state a claim that the 2014 omission of cleanings and the variable scheduling of his teeth cleanings from 2015-2018 was the proximate cause of any injury to Roy's teeth. Accordingly,

14

Roy's negligence/malpractice claims relating to the timing of
teeth cleanings (Claims 2(b) and 2(c)(iii)) should be dismissed.

    D.   Breach of Settlement Agreement (Claims 2(c)(ii), 3(d))

Roy asserts in Claim 2(c)(ii) and Claim 3(d) that
defendants, including Dr. Dransite and Dr. Aviles, breached the
2010 settlement agreement by failing to stick to a consistent
twice-yearly dental cleaning schedule after January 2015 and by
failing to "fast-track" his receipt of a lower partial denture.
At a minimum, Roy must plead facts to show that each defendant
alleged to be liable for a breach of contract was a party to
that settlement agreement.  See generally Wilcox Indus. Corp. v.
Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) (elements of
breach of contract).

Roy has not filed a copy of the settlement agreement at
issue in this case.  To the extent Roy asserts contract claims
against any defendants in their individual capacities, he has
failed to demonstrate that any defendant named in this case was
a party to the 2010 settlement agreement.  See Tessier v.
Rockefeller, 162 N.H. 324, 331, 33 A.3d 1118, 1124 (2011)
("plaintiff cannot sustain a cause of action seeking contract
damages against the defendants arising out of the settlement
agreement because there was no contract between the plaintiff
and the defendants").  Furthermore, Roy has not alleged that any

15

attorney signed that agreement on behalf of any defendant here in his or her individual capacity.  "[C]ontractual obligations cannot be imposed by the parties to a contract upon a non-party."  Judd v. S.E. Land Tr. of N.H., No. 16-cv-27-SM, 2016 DNH 159, 2016 U.S. Dist. LEXIS 124288, at *14 (D.N.H. Sept. 13, 2016) (citing Bald v. PCPA, LLC, 2016 DNH 081, 2016 U.S. Dist. LEXIS 52206, at *12, 2016 WL 1587227, at *4 (D.N.H. Apr. 19, 2016)).

To the extent Roy asserts breach of contract claims for damages or specific performance against the defendants in their official capacities, the Eleventh Amendment prevents him from litigating those claims here.  See Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544, 553 (1st Cir. 2018); see also Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 256–57 (2011).  Accordingly, Roy cannot proceed here on his breach of contact claims against the defendants he has named.  For those reasons, Claims 2(c)(ii) and 3(d) should be dismissed.

E.    Eighth Amendment Claims

Roy asserts that defendants are liable for injunctive relief under 42 U.S.C. § 1983, in their official capacities, and for damages in their individual capacities, based on deficiencies in his dental care that he asserts violated his

Eighth Amendment rights.[4]  An Eighth Amendment claim challenging the adequacy of prison health care services, including dental care services, has both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005) ("'dental care is one of the most important medical needs of inmates'" (citation omitted)).  "[T]he deprivation alleged must be, objectively, 'sufficiently serious'"; a prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted).  The objective component may be established by allegations regarding an unmet serious medical or dental health need, "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74

---

[4]Roy's official capacity claims under 42 U.S.C. § 1983 are limited to claims for prospective relief.  To the extent Roy asserts claims for damages against the defendants in their official capacities, the Eleventh Amendment prevents him from litigating those claims here, in the absence of the State's waiver or Congressional abrogation of the State's immunity.  See Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544, 553 (1st Cir. 2018); Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).  Congress has not abrogated the State's Eleventh Amendment immunity under section 1983, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989), and the State has not waived it here.

(1st Cir. 2016); see also Board, 394 F.3d at 480 ("dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need" (citing cases regarding, among other things, "deterioration of teeth due to lack of treatment")).

The subjective component of an Eighth Amendment claim requires the plaintiff to demonstrate that the prison officials acted with deliberate indifference to the plaintiff's health or safety.  See Miranda-Rivera, 813 F.3d at 74.  "'[M]ere negligence'" is insufficient to support an Eighth Amendment claim.  Mosher v. Nelson, 589 F.3d 488, 494 (1st Cir. 2009) (citation omitted).  To state an Eighth Amendment claim, a plaintiff must assert facts, of which the defendant was aware, that gave rise to an inference that a substantial risk of serious harm existed, that the defendant drew the inference, and that the defendant failed, by act or omission, to take reasonable steps to ameliorate the risk.  See Farmer, 511 U.S. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018) ("'plaintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm'" (citations omitted)); Miranda-Rivera, 813 F.3d at 74 ("there is no deliberate indifference if an official responds reasonably to the risk").

1.  MHM and Centurion

Roy alleges that defendants MHM and Centurion are liable
under 42 U.S.C. § 1983 with respect to the matters set forth in
the complaint.  MHM and Centurion are alleged to be private
corporate entities that contracted with the DOC to provide
dental health services to DOC inmates.  Plaintiff alleges that
MHM contracted with the DOC to provide dental health care to NCF
inmates until April 2018, and that Centurion contracted to do so
after the MHM contract ended.

The cited civil rights statute, 42 U.S.C. § 1983, provides
a cause of action for individuals deprived of their federal
rights by any "person" acting under color of state law.
In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the
Supreme Court considered, among other things, whether municipal
corporations that are "legal" persons, can be liable under
§ 1983 like "natural" persons.  See id. at 683.  The Court held
that Congress intended § 1983 to impose liability on those
entities for injuries inflicted by the execution of governmental
policies and customs.  See id. at 694 (local government entities
may be held liable under § 1983 if "execution of a government's
policy or custom, whether made by its lawmakers or by those
whose edicts or acts may fairly be said to represent official
policy, inflicts the injury").

Although neither the First Circuit nor the Supreme Court

19

has ruled on a case regarding whether private corporations
performing state functions can be held liable under § 1983 under
a theory of respondeat superior if they may otherwise be deemed
liable for acting under color of state law, those courts that
have decided the issue have generally concluded that <u>Monell</u>'s
prohibition on respondeat superior liability under § 1983
applies equally to private corporations and their municipal
counterparts.  <u>See, e.g.</u>, Street v. Corr. Corp. of Am., 102 F.3d
810, 818 (6th Cir. 1996) ("'A defendant cannot be held liable
under section 1983 on a respondeat superior or vicarious
liability basis.'" (citation omitted)); Carr v. Metro. Law Enf't
Council, Inc., No. CIV.A. 13-13273-JGD, 2014 WL 4185482, at *7,
2014 U.S. Dist. LEXIS 115904, at *20 (D. Mass. Aug. 20, 2014)
(defendant private corporation, "performing the functions
traditionally undertaken by municipal law enforcement agencies,"
should have "rights and obligations under § 1983 [that are]
coterminus with those of a municipality"); Trimble v.
Androscoggin Valley Hosp., Inc., 847 F. Supp. 226, 228 (D.N.H.
1994).  <u>Cf.</u> Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 378-79
(7th Cir.) (en banc) (declining to rule on whether private
corporations might be subject to vicarious liability under
section 1983, while noting that "a private corporation that has
contracted to provide essential government services is subject
to at least the same rules that apply to public entities"

(citing cases)), cert. denied, 138 S. Ct. 109 (2017). Smith v.
Insley's Inc., 499 F.3d 875, 882 at n.4 (8th Cir. 2007) ("The
rationale behind this principle is that corporations or
municipalities should not be held liable for employee actions
which the organization likely does not know are occurring.").

This court turns to whether Roy has alleged facts to state
an Eighth Amendment claim against MHM or Centurion, regarding
their performance of government services in providing health and
dental care services to DOC inmates.  Roy has not alleged that
policies, practices, or customs of MHM or Centurion gave rise to
his Eighth Amendment claims; to the extent a practice, policy,
or custom is implicated, Roy appears to allege that DOC is
responsible, not the private corporations he names.  Roy has
thus failed to plead sufficient facts to state a claim under
§ 1983 against those private corporations.  Accordingly, the
Eighth Amendment claims against MHM and Centurion should be
dismissed for failure to state a claim upon which relief can be
granted.

2.    Eighth Amendment-Teeth Cleanings (Claim 2(c)(i))

Claim 2(c)(i) summarizes Roy's federal claims arising from
the timing of his semi-annual teeth cleanings from 2015 through
2018.  Roy asserts that the scheduling of his routine cleanings
in 2015 (January and August), 2016 (April and October), 2017

(April and December), and 2018 (June and December), violated his Eighth Amendment rights.  Stripped of legal conclusions, Roy's allegations as to those teeth cleanings fail to state an Eighth Amendment deliberate indifference claim upon which relief can be granted.  See Vaughn v. Cambria Cty. Prison, 709 F. App'x 152, 155 (3d Cir. 2017); Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) ("mere failure to provide a routine tooth cleaning doesn't create a serious medical need").  Accordingly, Claim 2(c)(i) should be dismissed for failure to state a claim upon which relief can be granted.

### 3.    Delays as to Lower Partial (Claims 3(a), 3(b))

In Claims 3(a) and (b), Roy asserts violations of his Eighth Amendment rights on the grounds that defendants were deliberately indifferent to a substantial risk of serious harm to Roy, resulting from delays preceding his receipt of a lower partial denture in December 2016.

### i.    Dentists (Claim 3(a))

Claim 3(a), alleging the defendant dentists' deliberate indifference to a substantial risk of serious harm to Roy's remaining bottom teeth, relating to their failure prior to October 2016 to expedite Roy's receipt of a lower partial denture, survives preliminary review.  The Order issued this

date directs service of that claim on the defendant dentists named in Claim 3(a).

### ii.  Supervisory Prison Officials (Claim 3(b))

Claim 3(b) is Roy's Eighth Amendment claim asserting that the defendant prison supervisory officials, DOC Commissioner Hanks, Medical Director Mattis, and Deputy Medical Director Campbell, were deliberately indifferent to the risk of harm to Roy resulting from his delayed receipt of a lower partial denture.  Supervisory liability for a claim asserted under 42 U.S.C. § 1983 lies only where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotation marks and citation omitted).

> A plaintiff can establish that "affirmative link" by alleging that the supervisor was "a primary violator or direct participant in the rights-violating incident," or that "a responsible official supervises, trains or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015) (citations omitted).

Roy asserts in Claim 3(b) that defendants Mattis and Campbell were subjectively aware that a delay in Roy's receipt

23

of the lower partial exposed him to harm, in grievances answered by Mattis in September 2016 and Campbell in November 2016.  In her September 2016 response to Roy's grievance, Mattis states that she spoke with Dr. Anzel regarding Roy's concerns about his delayed receipt of a lower partial.  Less than a month later, and shortly after Roy sent a follow-up grievance to Mattis on October 21, 2016, Dr. Anzel made an impression for that lower partial.  Defendant Campbell answered Roy's follow-up grievance on Mattis's behalf on November 22, 2016, after the impression had been made, stating that the issue had been "resolved."  Roy received the new lower partial a month later, on December 22, 2016.  Roy has not pleaded facts demonstrating that either Campell or Mattis were subjectively aware of the existence of any substantial risk of serious harm to Roy's teeth that ensued after they received Roy's grievances and before the date he received the lower partial, to which they did not respond reasonably.  Accordingly, Claim 3(b) should be dismissed for failure to state a claim of an Eighth Amendment violation.

        4.   <u>Loss of Fillings on Tooth #28 (Claims 4(a), 4(b))</u>

Claims 4(a) and 4(b) are Roy's Eighth Amendment claims relating to tooth #28's loss of fillings on December 29, 2016 and the defendants' failure to repair that tooth after they received notice that the fillings had fallen out.  Roy sent IRSs

24

to Dr. Anzel and Dr. Batchelder in early January 2017 stating
that tooth #28 had disintegrated as three fillings had fallen
out, and further reporting that Roy was able to continue to use
his lower partial to eat.  He sent a similar IRS to Dr.
Batchelder in July 2017 stating that, although the fillings were
still missing, he was able to hold the lower partial in place
using dental adhesive.  Those IRSs belie any reasonable
inference that those defendants was subjectively aware that the
loss of fillings presented a serious medical need relating to
Roy's ability to use his lower partial to eat or avoid excessive
wear to his remaining teeth.

As to whether the lost fillings presented a serious medical
need for repairs, per se, Roy has specifically alleged that Dr.
Anzel diagnosed tooth #28 as irreparable in July 2017.  Nothing
suggests that the condition of tooth #28 changed between January
2017 and July 2017, and Roy has not pleaded any facts
demonstrating that the missing fillings presented any
substantial risk of serious harm to him at that time, as to
which Dr. Anzel or any other dentist treating him in 2017 was
subjectively aware.

An unnamed dentist made a crown for tooth #28 that lasted
from December 2017 until March 2018, when it broke off.  Roy
alleges that Dr. Pande examined tooth #28 a month later, and
found it to be free of decay in April 2018.  Dr. Pande refused

to repair that tooth at that time, telling Roy that the only
procedure he would perform on that tooth was extraction.  While
Roy has stated that he will not authorize the extraction of
tooth #28, and he prefers repairs or implants, the dentists'
failure to follow Roy's preferred course of treatment for the
damage to tooth #28 does not form the basis of an actionable
Eighth Amendment claim.

Moreover, Roy's complaint lacks any allegation that any
defendant dentist was aware that the fillings missing from tooth
#28 caused Roy to suffer any pain amounting to a serious, unmet
medical or dental need.  Roy has filed exhibits stating that
four days after he complained of pain to the NCF Dental
Department, an unnamed dentist applied composite to tooth #28
which alleviated the pain.  Roy has not pleaded any facts
suggesting that any named defendant was subjectively aware of
and deliberately indifferent to Roy's pain at any relevant time
with regard to tooth #28.  Claims 4(a) and 4(b) should thus be
dismissed for failure to state a claim upon which relief can be
granted.

### 5.   Abscessed Teeth (Claims 5(a), 5(b))

Roy has pleaded facts in Claim 5(a), giving rise to a
cognizable claim that the defendant dentists' failure to treat
his abscessed teeth for more than a year violated his Eighth

26

Amendment rights.  Accordingly, in the Order issued this date the court has directed service of Claim 5(a) upon the dentists named as defendants therein.

As to the same claims asserted against the defendant supervisory prison officials (Claim 5(b)), however, Roy has failed to plead any facts showing that the defendant prison officials were subjectively aware of any delays presenting a substantial risk of serious harm to Roy preceding his receipt of antibiotics for those teeth in July 2017.  Accordingly, Claim 5(b) should be dismissed for failure to state a claim upon which relief can be granted.

### 6.   Decay (Claims 6(a), 6(b))

Roy alleges that an unnamed dentist diagnosed an unspecified number of Roy's teeth on December 1, 2017 as having chips or decay.  Roy asserts that the failure to treat decay in Roy's teeth from December 1, 2017 until the present manifests defendants' deliberate indifference to a substantial risk of serious harm.  Cf. Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) ("because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law" (citation omitted)).  Claim 6(a) asserted against the defendant dentists in their individual and official

capacities survives preliminary review.  Accordingly, in the
Order issued this date, the court has directed service of Claim
6(a) for damages on the defendant dentists in their individual
capacities, and for injunctive relief upon the DOC dentists in
their official capacities as providers of dental services to DOC
inmates.

     As to Claim 6(b), however, Roy has failed to plead any
facts showing that the defendant supervisory prison officials
were subjectively aware of the lack of treatment for Roy's
decayed teeth identified in December 2017.  Roy asserts he did
not know he had any decay in those teeth until August 2018,
seven months after he asserts he sent an IRS to Director Mattis
on January 14, 2018 regarding not receiving scheduled
appointments for "necessary procedures" identified by dentists.
August 2018 Affidavit (Doc. No. 1, at 25).  Roy's June 2018
grievance to Commissioner Hanks also does not state or indicate
that Roy had any untreated decay on his teeth.  Nothing in the
record here indicates that any of the defendant prison officials
was alerted to, or otherwise became subjectively aware of, any
substantial risk of serious harm to Roy relating to Roy's
untreated tooth decay, identified in December 2017, prior to the
institution of this lawsuit.  Accordingly, Claim 6(b), asserted
against the defendant prison officials, should be dismissed for
failure to state a claim upon which relief can be granted.

### 7.  Kathy Belisle (Claim 7)

In Claim 7, Roy asserts that Kathy Belisle violated his Eighth Amendment rights by failing to schedule appointments to address dental problems diagnosed by dentists, including the abscesses diagnosed by Dr. Aviles, Dr. Anzel, and Dr. Shyne, and the decay diagnosed by the unnamed dentist in December 2017. The complaint, however, fails to plead any nonconclusory facts demonstrating that Belisle, when she is alleged to have failed to schedule appointments, was aware of or deliberately indifferent to any substantial risk of serious harm to Roy. Accordingly, Claim 7 should be dismissed, and Belisle should be dropped as a party to this case.

### F.  Remaining State Claims (3(c), 4(c), 5(c), 6(c))

The court may properly exercise supplemental jurisdiction over the dental malpractice/negligence claims in this case that arise from the facts underlying the Eighth Amendment claims that this court has deemed sufficient to survive preliminary review, namely, the state law claims set forth in Claims 3(c), 5(c), and 6(c). At this stage of the case, the court may continue to exercise supplemental jurisdiction over the dental malpractice/negligence claim identified herein as Claim 4(c), as that claim appears to present a similar set of legal and factual issues and names a similar set of defendants, as the other

29

claims in this case which survive preliminary review. Therefore, in an Order issued this date, the court directs service of tort Claims 3(c), 4(c), 5(c), and 6(c) upon the defendant dentists named in those claims, and upon MHM and Centurion.


II.  Motion for Preliminary Injunction (Doc. No. 18)

Plaintiff has moved for a preliminary injunction (Doc. No. 18) mandating that defendants treat plaintiff's dental problems, identified in the December 1, 2017 examination as decay, "so as to preserve what is left of [Roy's] teeth using methods that are outlined in and not excluded by [DOC Policy and Procedure Directive] 6.28."  In the Order issued this date, the court has established a briefing schedule for Roy's motion (Doc. No. 18).


## Conclusion

For the foregoing reasons, the district judge should order that defendant Kathy Belisle be dropped as a defendant and that Claims 1, 2(a), 2(b), 2(c)(i), 2(c)(ii), 2(c)(iii), 3(b), 3(d), 4(a), 4(b), 5(b), 6(b), and 7 be dismissed.  Any objections to this R&R must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district

court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d
163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

April 24, 2019

cc:  Steven J. Roy, pro se